UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-20494-ALTMAN(s)

UNITED STATES OF AMERICA

v.

DAVID WAYNE CURRIN JR.,

       **Defendant.**

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

On January 23, 2025, Defendant David Wayne Currin Jr. pleaded guilty to one count of production of visual depictions involving the sexual exploitation of minors and one count of transportation of visual depictions involving the sexual exploitation of minors. (DE 30). These charges stem from the Defendant's abuse of his non-verbal, severely autistic, 11-year-old nephew (the "Minor Victim") to engage in sexually explicit conduct that the Defendant video-recorded and distributed online. (DE 29). All of the statutory factors weigh in favor of the guidelines range sentence calculated by Probation of 600 months' imprisonment. (*See* DE 41 ("PSI") ¶ 79). This Sentencing Memorandum serves to provide additional support on why a 600-month sentence is warranted given: (i) the extreme vulnerability of the Minor Victim; (ii) evidence that the Defendant sexually abused the Minor Victim and others; and (iii) the need to meet the goals of sentencing and avoid unwarranted sentencing disparities.

    **I.**    **FACTUAL BACKGROUND**

On October 30, 2024, the Defendant arrived at the Miami Seaport from a Caribbean cruise. (PSI ¶ 10). A Customs and Border Protection ("CBP") secondary inspection revealed child sexual

1

abuse material ("CSAM") on the Defendant's phone, including videos and images showing the sexual abuse of prepubescent minors, toddlers, and infants. (*Id.* ¶¶ 11, 18). On November 5, 2024, Magistrate Judge Eduardo Sanchez ordered the Defendant detained, not only because of the CSAM found on the Defendant's phone, but because of the Defendant's alarming chat conversations, in which the Defendant bragged about his own hands-on sexual activity with minors. (DE 12). These included conversations in which the Defendant referred to: (i) going to a pool party with a "bunch of kids" to engage in sexual activity, (ii) attempting to engage in sexual activity with children in his own family as they were sleeping, and (iii) playing with, touching, and sucking the penis of the Defendant's non-verbal, autistic nephew. (*Id.*).

Law enforcement, equally alarmed by these conversations, continued to review the Defendant's phone. At the same time, the Minor Victim's father, who learned of the Defendant's arrest, contacted law enforcement upon reading that the Defendant "referenced engaging in sexual activity with a ten-year-old, autistic child." (DE 1 ¶ 10). The Minor Victim's father feared that these conversations may have been about his non-verbal autistic son. The worst of these fears were confirmed when agents showed the Minor Victim's parents screenshots from a sexually explicit video of a child whom law enforcement suspected to be the Minor Victim. In the video, a prepubescent boy, wearing only a diaper and a white shirt, walks toward the camera and begins tearing the left side of his diaper. (PSI ¶ 15). An adult hand enters the frame and uses his index finger to completely tear off the left side of the child's diaper. (*Id.*) The child's diaper is completely removed, exposing the child's genitalia. (*Id.*) The focal point of the video from beginning to end is the child's genital area in the diaper and his bare penis, once exposed.

The Minor Victim's parents immediately recognized their son: from the distinctive diaper

brand he wears because of his severe disability, from the room it was taken in—a family home that the Minor Victim and his father lived in, that the Defendant had a key to, and from the Minor Victim's genitalia and his toes. Law enforcement discovered this video in a July 2024 Telegram chat between the Defendant and another individual, J.J.[1] The Defendant sent the video and wrote, "too bad I didn't have more time." (PSI ¶ 15). J.J. responded, "I thought at least to touch him." (*Id.*) The Defendant replied, "I know. Maybe later. It was tricky." (*Id.*) J.J. suggested that the Defendant "train" the Minor Victim, to which the Defendant responded, "lol, I don't see him often enough."

In an earlier chat on June 21, 2024, with J.J., the Defendant discussed sexually abusing the Minor Victim:

| Sender | Message |
|---|---|
| Defendant | There's a boy that is nonverbal autistic. I've played with him before |
| J.J. | How |
| Defendant | I touched his dick and sucked it once |
| J.J. | What he did<br>His age? |
| Defendant | He was too ticklish<br>Like 10? |
| J.J. | Any pic |
| Defendant | Nope |
| J.J. | Damnn why |
| Defendant | Lol idk. Wasn't thinking about it.<br>I want to try again. Or maybe my cousins when they're sleeping. |

(Ex. 1 at 12–14).

In chats on July 5 and 6, 2024, the Defendant wrote:

| Sender | Message |
|---|---|
| Defendant | Tonight and tomorrow night I might be staying in a hotel with |

---

[1] A version of the full chat conversation that omits child sexual abuse material is attached hereto as Exhibit 1. This was previously produced to Defense counsel on February 6, 2025. (*See* DE 33).

| | |
|---|---|
| | that boy that I played with a while ago. [Sends photo of the Minor Victim] Well not tonight. Maybe tomorrow |
| J.J. | Who is that |
| Defendant | My nieces brother. |
| J.J. | Wooow Where are u guys |
| Defendant | Near Tampa. Went to a spring. For my niece's bday We were going to all share a hotel room but it was too cramped. Mom and I got our own. The bathrooms at the springs were not good for spying either. lol Only thing I saw was a little boy peeing in the grass near us. |
| J.J. | You have to let him to download telegram |
| Defendant | Haha he's autistic and only 10 |
| J.J. | Dsmnnn He is super cute |
| Defendant | Yes He's the one I've played with before. |
| J.J. | Really |
| Defendant | Yea I played with his little penis, tried sucking but he was super ticklish |
| J.J. | Ohhh |
| Defendant | I don't think I'll have a chance now though. |
| J.J. | Why |
| Defendant | He's never alone. Only reason I could before, is he lived next door and I would have to watch him if my sister was working. |
| J.J. | Is.sje not working anymore |
| Defendant | The kids weren't hers and they moved away. She had my niece with their dad, they broke up. He left with the older kids. |
| J.J. | Ok |
| Defendant | The boys grandma is here too. She watches him constantly. |

(Ex. 1 at 30–35).

In other chats with J.J., the Defendant referenced sexual contact he had with another minor. Specifically, on June 30, 2024, the Defendant asked, "did you happen to have the video I sent you a while ago of me and the boy in target?" (PSI ¶ 13). J.J. responded a day later, attaching a video

4

of an adult male sitting on a toilet in a bathroom stall, masturbating. (*Id.*) A prepubescent male then appears from underneath an adjacent bathroom stall, reaches up, and grabs the adult male's penis. (*Id.*) The Defendant responds, "thank you! I couldn't find it anywhere." (Ex. 1 at 23).

## II.   LEGAL STANDARD

Congress listed the considerations for sentencing courts in 18 U.S.C. § 3553(a). They include the following: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the instant offense by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

## III.   ARGUMENT

All of the statutory factors this Court considers weigh in favor of a within-guidelines sentence of 600 months' imprisonment. The sentencing guidelines call for the Court to impose such a sentence by running consecutively the sentences on the two counts of conviction. *See* U.S.S.G. § 5G1.2(d). This Court should impose a 600-month, or fifty-year sentence, by ordering a thirty-year term of imprisonment on Count 1 of the Indictment, consecutive to a twenty-year

term of imprisonment on Count 2 of the Indictment. What best exemplifies the need for a guidelines-range sentence is: (i) the extreme vulnerability of the Minor Victim; (ii) evidence that the Defendant sexually abused the Minor Victim and other children; and (iii) the need to meet the purposes of sentencing and avoid unwarranted sentencing disparities.

### a. The Defendant Exploited the Minor Victim's Extreme Vulnerabilities

The Defendant targeted his 11-year-old, autistic nephew—a child who wears diapers because of the severity of his disability, a child who is completely non-verbal, a child who the Defendant was entrusted to care for—because he knew that child could not report the Defendant's abuse or cry for help. The fact that the Defendant selected and abused this Minor Victim speaks to all of the statutory sentencing factors, but particularly the nature and circumstances of the offense and the Defendant's history and characteristics.

The two-level enhancement under U.S.S.G. § 3A1.1(b)(1) applicable here purports to account for the vulnerability of certain victims. However, it is an incomplete measure in accounting for the extreme vulnerability of *this* Minor Victim. In *United States v. Kapordelis*, the Eleventh Circuit affirmed a vulnerable victim enhancement where the victims were "asleep or otherwise nonresponsive and, thus, unable to object or respond in any way when [defendant] pulled down their underwear and exposed their genitalia or anuses for the camera." 569 F.3d 1291, 1316 (11th Cir. 2009). Here, the Minor Victim was similarly unable to object when the Defendant pulled off his diaper and exposed his genitalia for the camera, but not because he was asleep or otherwise nonresponsive. Sickeningly, the Minor Victim was very much awake for this abuse, but because of his severe disability, he could not object or otherwise stop the Defendant. And worse, the Defendant was acutely aware of the Minor Victim's greatest vulnerabilities because he joked about

6

them in his chats to J.J., writing, "haha he's autistic and only 10." (PSI ¶ 14). The Court should consider the Minor Victim's uniquely extreme vulnerabilities, as well as the Defendant's cavalier attitude towards them, in fashioning a just sentence here.

### b. The Defendant's Sexual Abuse of the Minor Victim and Other Children

This Court should also consider evidence that the Defendant sexually abused the Minor Victim in imposing a guidelines-range sentence as this is relevant to all the statutory factors. While there is no question that the Defendant produced a sexually explicit video of the Minor Victim and shared this video online, in the Defendant's own private conversations with J.J., the Defendant admitted, on two separate occasions, to touching the Minor Victim's penis and attempting to perform oral sex on the Minor Victim.

Specifically, on June 21, 2024, the Defendant wrote about how he "touched [the Minor Victim's] dick and sucked it once," but lamented how the Minor Victim was, "too ticklish." (PSI ¶ 12). Somehow undeterred, the Defendant wrote, "I want to try again." (Ex. 1 at 14). This speaks volumes as to the Defendant's egregious conduct. The Defendant again wrote in July 2024 about the Minor Victim, confirming the past sexual abuse: "He's the one I've played with before. . . . I played with his little penis, tried sucking but he was super ticklish." (PSI ¶ 14). While the non-verbal Minor Victim will never be able to speak to this Court himself about the abuse he endured, this Court can *and should* rely on the Defendant's own statements to determine that the Defendant did, in fact, sexually abuse the Minor Victim.[2]

---

[2] Beyond the Defendant's self-admitted conduct, this Court can also rely on the fact that the Defendant's other statements in the same chat are factually accurate. On July 5, 2024, the Defendant wrote, "tonight and tomorrow night I might be staying in a hotel with that boy that I played with a while ago. . . . My nieces [sic] brother." (PSI ¶ 14). The Defendant further explained that his family was going to a "spring" near Tampa to celebrate his niece's birthday. (*Id.*). The

7

And, while the Defendant may now attempt to characterize these statements as mere puffery or fantasy, the fact that the Defendant himself acknowledged the limitations of his access to the Minor Victim belies any such attempt. On July 6, 2024, the Defendant wrote regarding the chance to sexually abuse the Minor Victim again: "I don't think I'll have a chance now though. . . . He's never alone." The Defendant was honest and forthcoming about the abuse he was able to perpetrate, as well as the current limitations on his access to the Minor Victim. His words should be taken at face value.

Sadly, the Defendant's own statements also reveal that the Minor Victim was just one of the Defendant's many victims. The Defendant asked J.J., "did you happen to have the video I sent you a while ago of *me and the boy* in target?" (PSI ¶ 13) (emphasis added). J.J. responded the next day saying, "yes why" along with a video of a boy stroking an adult male's penis in a bathroom stall. (*Id.*). The Defendant then thanked J.J. for sending the video, noting he could not find it anywhere.

The only logical inference from this conversation is that the Defendant is the adult male in that video, sexually abusing another minor victim. But beyond the sexual abuse in that moment, the Defendant recorded and shared the abuse online, so that it could be sent to others, like J.J., and re-shared again with the Defendant when he "couldn't find it anywhere." (Ex. 1 at 23). On top of all of this are the images and videos, totaling over 2,000 images, found on the Defendant's phone

---

Defendant also stated, "we were going to all share a hotel room but it was too cramped. Mom and I got our own." (Ex. 1 at 32). All of the Defendant's statements were corroborated by the Minor Victim's father, who confirmed the family went on vacation in Weeki Wachee Springs, near Tampa, on July 5 through 7, 2024. The Minor Victim's father explained that he stayed in a hotel room with his mother and four children, including the Minor Victim, while the Defendant and the Defendant's mother stayed in a separate hotel room.

depicting the sexual abuse of prepubescent children, toddlers, infants, by countless other individuals. (PSI ¶ 22). The Defendant's transportation of such materials, while perhaps the least shocking in the Defendant's horrific activity, should also be considered by this Court in imposing a sentence that adequately accounts for each sentencing factor. *See e.g.*, *New York v. Ferber*, 458 U.S. 747, 759 (1982) (stating that "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation"); *see also United States v. Pugh*, 515 F.3d 1197, 1197–98 & n.12 (citing extensive congressional findings about the harm caused by child pornography and recognizing that "[i]n light of these detailed findings and numerous legislative enactments, we cannot help but underscore the seriousness of this crime; *see also* Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109–248, § 501(2)(D), 120 Stat. 587, 624 (2006) (codified at 18 U.S.C. § 2251 note) ("Every instance of viewing images of child pornography represents a renewed violation of the privacy of victims and a repetition of their abuse.").

The Defendant's sexual abuse of his autistic non-verbal minor nephew by itself would warrant the 600-month sentence here. But considered in conjunction with all of the other minor victims in this case, the need for a guidelines-range sentence is that much more compounded.

### c. A 600-month Sentence Meets the Goals of Sentencing and Avoids Unwarranted Sentencing Disparities

A 600-month sentence is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the Defendant. Any downward variance will inadequately account for the factors Congress has instructed courts to consider. Moreover, the Defendant's offense conduct—producing a sexually explicit video of the Defendant's non-verbal, severely

9

autistic nephew and transporting thousands of images of child sexual abuse material—is not the type of conduct that warrants a downward variance. The Defendant's cavalier attitude regarding his conduct further exemplifies this point.

Instead, a 600-month sentence would be in line with sentences this very Court has imposed in cases involving similarly horrific facts. *See e.g.*, *United States v. Edward Cordovez*, Case No. 24-CR-20272-RKA, DE 74, (S.D. Fla. Feb. 19, 2025) (imposing sentence of 720 months in case involving the production, distribution, and possession of child pornography); *United States v. Robert Dunn*, 20-CR-80085-RKA DE 135 (S.D. Fla. July 29, 2022) (imposing sentence of 600 months in case involving the production of child pornography). The Eleventh Circuit has also upheld sentences in accord with the guidelines range as calculated in this case, affirming life and natural-life sentences for conduct similar to the Defendant's here. *See United States v. Boone*, 97 F.4th 1331, 1340–42 (11th Cir. 2024) (affirming 70-year sentence for former military officer who pled guilty to production of child pornography with his four-year-old daughter); *United States v. Isaac*, 987 F.3d 980, 995–96 (11th Cir. 2021) (affirming the reasonableness of an 80-year sentence on two counts of producing child pornography and one count of possessing child pornography); *United States v. Fox*, 926 F.3d 1275–82 (11th Cir. 2019) (affirming a 30-year sentence for a 60-year-old defendant convicted of one count of production of child pornography); *United States v. Harding*, 696 F. App'x, 955, 958 (11th Cir. 2017) (affirming the reasonableness of life sentence for former police officer who pled guilty to production of child pornography with two step-children).

IV.     CONCLUSION

It is impossible to adequately capture the irreparable harm caused by this Defendant's conduct. The Minor Victim, less than 12-years-old at the time of the Defendant's abuse, will live with this harm for the rest of his life. And while the Minor Victim will never be able to speak to the Court about this harm, the United States respectfully submits that this Court send a message to, and on behalf of, the Minor Victim and impose a guidelines-range sentence of 600 months' imprisonment.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

Date: April 9, 2025            By:    */s/ Ilana R. Malkin*
                                      Ilana R. Malkin
                                      Assistant United States Attorney
                                      Court ID No. A5503170
                                      99 Northeast 4th Street
                                      Miami, Florida 33132
                                      Tel.: (305) 961-9170
                                      Email: Ilana.Malkin@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 9, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Ilana R. Malkin*
Ilana R. Malkin
Assistant United States Attorney
